**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 30, 2001**

*In re* HONORABLE WARFIELD MOORE, JR.,
Judge of the Third Circuit Court,
Detroit, Michigan.

No.  112416

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

The Judicial Tenure Commission filed Formal Complaint No. 58 against the Honorable Warfield Moore, Jr., Third Circuit Court judge, on June 12, 1998.[1]  Pursuant to an agreement reached between the examiner for the commission and Judge Moore in November 1999, the allegations of misconduct set forth in paragraphs 1 through 17 of the complaint were dismissed with prejudice.  Further, the parties agreed that a public hearing on the remaining allegations contained in paragraphs 18 through 25 of the complaint would be held before the full nine-member commission rather than the appointed master.  This hearing occurred on March 13, 2000.  On July 18,

_____

[1] The commission was established by Const 1963, art 6, § 30.

2000, the commission issued its decision regarding misconduct, finding that Judge Moore had committed various instances of misconduct.[2] In its recommendation for order of discipline, filed October 10, 2000, the commission recommended that Judge Moore be suspended for nine months without pay.

On de novo review,[3] we conclude that Judge Moore committed misconduct. However, we disagree that a nine-month suspension is warranted. Instead, we order Judge Moore suspended for six months without pay.

I

The allegations that form the basis of the commission's findings of misconduct and recommendation of discipline stem from incidents occurring during eight separate criminal cases over which Judge Moore presided, spanning the years 1994-1997.[4] The commission made the following factual findings in relation to each case.

A

Paragraph 18 of the complaint concerns *People v White*, Recorder's Court Case No. 94-3885. The defendant in this matter was charged with first-degree murder and possession of

---

[2] Although the decision regarding misconduct was issued on July 18, 2000, it was not filed until October 10, 2000.

[3] *In re Seitz,* 441 Mich 590, 594; 495 NW2d 559 (1993); *In re Bennett,* 403 Mich 178, 184; 267 NW2d 914 (1978).

[4] Six of the trials occurred in the Detroit Recorder's Court, which later became part of the Third Circuit Court. Judge Moore was first elected to the Detroit Recorder's Court in 1979.

a firearm during the commission of a felony.[5]  The commission found six instances of misconduct arising from this case.

First, the commission determined that Judge Moore created sympathy for the victim when, during jury selection, he compared the "viable" defendant with the murder victim, stating:

> Ladies and gentlemen, you are going to to [sic] meet shortly the defendant in this matter. He is a very viable individual.  Meaning he is alive and well like you and I.  He walks and talks and sleeps and eats and does all of the other function[s] that live human beings are wont to do. However, ladies and gentlemen, it is, there is an allegation that one Ronald Pemberton, Jr.[,] is no longer alive because it is alleged that he was shot to death, I believe, by the defendant premeditatedly, designedly.  And obviously, you won't see or hear him, from him in terms of seeing or hearing from him, ladies and gentlemen.

Second, in response to a prospective juror's comments that he was biased against the prosecution because his brother had been convicted of carrying a concealed weapon, Judge Moore asked the juror to explain how he would demonstrate his bias, stating, "How would you do it?  When you leave here, hiss or boo at her [the prosecutor]?"[6]  When this juror was dismissed for cause, Judge Moore made the following remark:

---

[5] The defendant was convicted of second-degree murder and felony-firearm.  The Court of Appeals reversed the defendant's conviction and remanded for a new trial, finding that the trial court's behavior had denied the defendant a fair trial. Unpublished opinion per curiam, issued July 1, 1997 (Docket No. 182605).  This Court peremptorily reversed and reinstated the defendant's convictions for the reasons stated by the dissenting Court of Appeals judge.  457 Mich 864 (1998).

[6] The commission's findings of fact do not quote Judge Moore exactly, stating that he asked, "'How would you show your bias' when you leave here, hiss or boo at [the prosecutor]?"

3

Of course, now, when anybody is out there with a gun and wants to use it, you tell them, come and see brother Nunley [the dismissed prospective juror]. He understands that. He understands you having a gun and putting it to his head.[7] I couldn't quite get with it myself. But different strokes for different folks, I guess.

Third, the commission found that a hypothetical example given by Judge Moore during jury selection, which named the defendant and was modeled on the facts of the case, improperly encouraged the prospective jurors to find the defendant guilty.

Fourth, the commission found that Judge Moore had commented spontaneously on the defendant's personal interest in the case and the effect of his interest on his credibility.

Fifth, the commission determined that Judge Moore had improperly interjected himself into the proceedings in a manner favorable to the prosecution by asserting an objection to the defense counsel's leading question and criticizing the prosecutor for failing to do so. Further, Judge Moore commented that the defense counsel was asking for conclusions that were really up to the jury to make.

Sixth, the commission found that Judge Moore unfairly criticized the Court of Appeals during sentencing when he stated in part:

Because I say, and I am going to put this on whether the Court of Appeals likes it or not. See, Court of Appeals, a lot of you folks up there who are white and middle class, you don't know. You

---

[7] When asked during jury selection whether he had been the victim of a crime, the dismissed juror explained that someone had put a gun to his head. He further indicated that one of his friends was hospitalized, having been robbed at gunpoint and shot.

4

don't have relatives who live in the ghetto.  You don't have black relatives who live in the ghetto who are trying to get over who are not that way. So you may think what I am saying, you shouldn't interject that.  I have to, because that is where I come from.  That is where I go to.  These are the People I talk to.[8]

B

The two allegations in paragraph 19 of the complaint stem from *People v Eklour*, Recorder's Court Case No. 94-4189.  The defendant was accused of attempting to defraud an insurance company by falsely claiming that his business was robbed.  The defendant was acquitted.

The commission determined that Judge Moore would not permit defense counsel to assert objections or make a record and that he made derogatory comments toward counsel in the presence of the jury.  Further, the commission found that during a trial recess, when the court was off the record, Judge Moore commented to the prosecutor that the only reason he wanted to cross-examine the witness is because she was not wearing a bra.

C

The incidents on which the allegations of paragraph 20 of the complaint were based occurred during *People v Payton,* Recorder's Court Case No. 95-006206.  The defendant, who was charged with first-degree murder, was acquitted.  The commission found six instances of misconduct during this matter.

---

[8] Just before this comment, Judge Moore indicated that he resented the "thought that because you are black and you live in the ghetto you are fashioned that way."

5

First, the commission found that Judge Moore ridiculed a prospective juror, who did not think that he could sit on a jury because he had a difficulty with memory, by mispronouncing the juror's name and joking with him about whether he could remember his name or where he worked.

Second, the commission determined that Judge Moore, for no apparent reason, inquired about whether a potential juror used drugs, asking her when she had last "smoked a joint or something."

Third, the commission found that Judge Moore had become argumentative with defense counsel after the attorney attempted to explain the basis for a particular line of questioning. Judge Moore instructed counsel that he should not whine and cry, and stated that he sounded like "a little spoiled kid." The jury was not present when this exchange occurred.

Fourth, the commission determined that Judge Moore had deferred his role as judge to the prosecutor by inviting the prosecutor to join in a disagreement with defense counsel, asking the prosecutor to explain if he [Judge Moore] was in error some way. This exchange also occurred outside the presence of the jury.

Fifth, the commission found that Judge Moore made a prosecutorial objection and ordered defense counsel to proceed with another question without permitting defense counsel to respond to the objection or to Judge Moore's statement concerning another objection asserted by the prosecutor.

Sixth, the commission determined that after the jury

6

acquitted the defendant, Judge Moore insinuated that he believed that the defendant was culpable, and after the jury was excused, chastised the defendant.

D

The allegations set forth in paragraph 21 of the complaint arose during *People v Ford,* Recorder's Court Case No. 95-08616. The defendant was charged with arson of a dwelling and as being an habitual offender. He was convicted by the jury.[9] The commission determined that this case gave rise to seven instances of misconduct.

First, Judge Moore made the following comment when a witness from the Detroit Fire Department was excused:

> No, all right. He says he's finished with you Lieutenant. Thanks for coming. You're free to leave. Go back and fight some more fires. Don't do like my man, don't light no fires, fight your fires.

Second, the commission found that Judge Moore advised an eight-year-old boy who testified[10] that if anyone should try to chastise him about testifying, he should tell them to see Judge Moore.

Third, the commission found that Judge Moore objected to defense counsel's questioning the defendant's ex-wife about whether she paid rent to the defendant, with whom she lived

---

[9] The Court of Appeals reversed the defendant's conviction, finding that the defendant had been denied a fair trial by Judge Moore's comments during trial. Unpublished opinion per curiam, issued December 1, 1998 (Docket No. 195964).

[10] The eight-year-old boy was the defendant's son. He testified that he observed the defendant set the fire to the house in which his (the witness') mother, who was the defendant's ex-wife, lived.

7

for a short time, finding the question "irrelevant, incompetent, immaterial."

Fourth, the commission determined that Judge Moore improperly suggested evidence to the jury when he advised the jury, during cross-examination of the defendant's ex-wife, when school started in 1995.  The witness could not recall when school began that year, and Judge Moore stated that his wife was a school teacher and that he believed school began in August of that year.  At the end of his explanation, he instructed the jury not to "take it as testimony."

Fifth, the commission found that the following statement, made outside the presence of the jury, indicated that Judge Moore had reached a conclusion about the testimony of a witness and the guilt of the defendant:

> Come on.  I mean, Jesus, I mean, how did he know what was in the gas can when he stuck the paper in and lit it afire?  I mean, for real.

Sixth, the commission found that after the verdict was rendered, Judge Moore commented three times that the defendant should have entered a plea to avoid requiring his eight-year-old son to testify.  Two of these comments were made in the presence of the jury, and one was made after the jury was excused.

Seventh, the commission found that Judge Moore berated the defendant during sentencing, calling him a "low life," "a despicable person," and the "meanest man" he had seen all year.

E

Paragraph 22 of the complaint concerned *People v*

8

*Anderson*, Recorder's Court Case No. 95-012333. The defendant was charged with first-degree murder and felony-murder. The jury convicted the defendant of second-degree murder.[11] The commission determined that four instances of misconduct occurred during this case.

First, the commission found that during voir dire, Judge Moore discoursed about how "ugly people" are not liked and how being "cute" helps you get along in the world.

Second, the commission found that during voir dire, Judge Moore commented that an insurance company must be "out of their sick mind" for refusing to provide coverage. This comment was made in response to explanation from a potential juror who had been a victim of a crime that the crime was not prosecuted because of a lack of evidence and that insurance would not provide coverage.

Third, the commission determined that Judge Moore spontaneously asserted an objection and summarized the prior testimony of a witness. Judge Moore failed to acknowledge defense counsel's point that it was the prosecutor's role to object and then proceeded to question the witness.

Fourth, the commission found that the following exchange, which occurred between Judge Moore and the defendant's

---

[11] The Court of Appeals affirmed the defendant's conviction, holding in part that the trial court's conduct and comments did not amount to manifest injustice. The Court explained that many of the remarks constituted a legitimate exercise of the trial court's responsibility to control proceedings and that the remaining remarks were not the type that would unduly influence the jury, depriving the defendant of a fair trial. Unpublished opinion per curiam, issued February 3, 1998 (Docket No. 195911).

girlfriend when he addressed her regarding her improper discussions with two jurors, was misconduct:

> *The Court*: Come on out here. Now, listen. You may think you all cute and everything because you're not cute worth a rip of anything.
>
> I'm going to send you home and I'm not going to allow you back.
>
> Look at me.
>
> You understand that?
>
> *Ms. Smith:* Yes.
>
> *The Court:* How old are you?
>
> *Ms. Smith:* Nineteen.
>
> *The Court:* Nineteen. Well, you take you and them 19 years and you-how many babies you got without a husband?
>
> *Ms. Smith:* One.
>
> *The Court:* Well, take your 19 years and that one baby and you stay at home.
>
> I don't want you down here tomorrow, you understand. You show up here tomorrow and you're going to spend the rest of the 29 days in jail.
>
> You look at me.
>
> You understand what I'm saying?
>
> *Ms. Smith:* Yes.
>
> *The Court:* You think I'm kidding with you?
>
> *Ms. Smith:* No.
>
> *The Court:* Yes. And if you say anything to anybody, if you stand out front, if I see you anywhere around this courtroom-look at me-you will be going to jail.
>
> You understand that?
>
> *Ms. Smith:* Yes.
>
> *The Court:* If you want to know what the verdict is, you call back here.

10

Now, you go home.

Give her her Social Security Card.

*Ms. Smith:* Thank you.

*The Court:* Only thing she ever had with her name typed on it probably besides a welfare check probably.

*Ms. Smith:* I work.

*The Court:* I know you work.

F

*People v Holmes*, Recorder's Court Case No. 96-00101, formed the basis for the allegations in paragraph 23 of the complaint. The defendant was charged with two counts of armed robbery and two counts of felony-firearm and was convicted on all counts.[12] The commission made six findings of misconduct in relation to this case.

First, the commission found that Judge Moore excessively interfered and improperly questioned witnesses to the detriment of the defense.

Second, the commission determined that Judge Moore made various objections to defense counsel's questioning of witnesses throughout the trial.

Third, the commission found that on three occasions, Judge Moore interrupted the examination of witnesses and summarized testimony on his own initiative.

---

[12] The Court of Appeals affirmed the defendant's convictions, finding that the trial court's interruptions and criticisms of defense counsel did not deprive defendant of a fair trial because his behavior did not pierce the veil of judicial impartiality. However, the Court further explained that it did not condone and, in fact, seriously questioned the trial court's condescending attitude. Unpublished opinion per curiam, issued November 14, 1997 (Docket No. 198450).

11

Fourth, the commission found that Judge Moore was argumentative with defense counsel and that he prohibited both the prosecutor and defense counsel from addressing certain issues. Further, he was abusive and sarcastic toward counsel.

Fifth, the commission determined that Judge Moore made inappropriate remarks concerning the Detroit Free Press and other judges from the Recorder's Court. In response to a juror's question whether Judge Moore had read an article on someone Judge Moore had mentioned, Judge Moore responded that he did not "read the scab rag, I haven't read it since they went on strike." In explaining the reason for a brief delay, Judge Moore stated:

> And we're happy to have you back again. Again, I apologize for the 15 minutes or so delay, but we're still in the picture-taking. We take individual pictures, we take individual things, we take group pictures, and there's nothing like getting . . . Getting all judges together is like getting the United Nations together, everybody's a king, you know what I mean, and nobody tells the king what to do. And especially if they're queens. What do you mean? Would you . . . And don't mess with these queens, you talk about stinging you to death. Anyway so I apologize once again.

Sixth, the commission found that at sentencing, Judge Moore made stereotypical comments on the basis of race:

> I mean, there were two women who identified him pretty good and their circumstances led right on down to getting him. This is not some white women out there who think that all black men look alike or Chinese women. They are black women who got a good look at him while he was poking his gun at 'em and taking their coats and so forth, and so there's no . . . they do not seem to have any kind of special grievance against your client.

G

The allegations in paragraph 24 of the complaint were

12

based on Judge Moore's conduct during *People v Johnson and Brock*, Wayne Circuit Court, Criminal Division Case No. 97-03614. Each defendant was charged with assault with intent to rob while armed and felony-firearm. Defendant Johnson was also charged with assault with intent to commit murder.[13] The commission made eight findings of misconduct in this case.

First, the commission found that Judge Moore questioned witnesses in a manner favorable to the prosecution. Judge Moore interrupted defense counsel's questioning of a witness concerning lineup procedures and then discussed the difference between refreshed recollection and past recollection recorded for the benefit of some students who were observing the trial. Further, Judge Moore interrupted defense counsel and questioned a witness regarding the reading of rights to defendant Brock.

Second, the commission determined that Judge Moore made objections during defense counsel's questioning of witnesses, summarized prior testimony of a witness, and discussed the anticipated testimony of other witnesses.

Third, the commission found that Judge Moore improperly limited defense counsels' presentation of their case by summarily determining that the anticipated testimony of a witness they wished to call was not relevant to the trial and prohibiting the witness from being called. The commission

_____

[13] The Court of Appeals reversed defendant Johnson's convictions for assault with intent to rob while armed, felonious assault, and felony-firearm because it determined that the trial judge's conduct deprived the defendant of a fair trial. Unpublished opinion per curiam, issued July 21, 2000 (Docket No. 210699).

13

believed that this action indicated that Judge Moore "was more concerned with the length of the trial than with providing defense counsel with a full opportunity to present its case."

Fourth, the commission determined that Judge Moore made an abusive remark to counsel when he stated that the attorneys sounded like "a bunch of old women," who didn't know the Rules of Evidence.

Fifth, the commission found that Judge Moore summarized the subject matter of the testimony that he believed the attorneys intended to pursue and berated counsel rather than discussing the necessity of the anticipated testimony.

Sixth, the commission determined that Judge Moore raised his voice at defendant Johnson while he was testifying. The following exchange ensued when defense counsel objected:

*Mr. Lusby (defense counsel):* Excuse me, Your Honor.

*The Court:* Yes, what is it sir?

*Mr. Lusby:* My objection really goes to the Court, inadvertently I assume, but, you know, my client . . .

*The Court:* What?

*Mr. Lusby:* Raised your voice at my client.

*The Court:* I'm a raise voice person, sir.

*Mr. Lusby:* Judge, I understand that.

*The Court:* Well, fine, sir. I'm not telling him to do anything wrong. I'm just telling him to realize . . . Listen, I want to get this case over with, gentlemen.

*Mr. Lusby:* Judge, listen to yourself now, please.

*The Court:* I'm listening to myself and I'm listening to you too.

14

> *Mr. Lusby:* Okay, okay.

> *The Court:* Just want to get this case over.

> *Mr. Lusby:* Okay.

> *The Court:* You can scream all you want. Now you gonna cry. Sit down, Mr. Lusby.

> *Mr. Lusby:* I need some water.

> *The Court:* I can't believe this. Crying. Ask your question, sir. Let him get his water.

> Sir, listen to the question. Answer the question that is asked of you, please, so we can get on with this case. Carry on, Mr. Prosecutor.

> Now, I'm gonna tell you something, Ladies and Gentlemen, and I want you . . . If you think that I am screaming and hollering, whatever, then you note it. Part of this, see, is to build this record so that when it goes to the Court of Appeals, if it ever gets there, gonna say well, Judge, you sat there screaming at my client. I don't believe I've talked to this man any different than I've talked to anyone else. If so, you tell me, have I? Have I talked to this man any different than I have? Well, that's my intent is not to talk to him any different than anybody else. Just get this case over with.

Seventh, the commission determined that the following exchange occurred between Judge Moore and defendant Brock's father, who was a Detroit police officer, when Mr. Brock left the courtroom during sentencing:

> *The Court:* Listen, Lieutenant . . . Hey, tell him to come back here. Your father can think whatever he wants about it. He can jump up and do whatever he wants there if he doesn't like it. I don't like his attitude. Just because he . . . That's part of the problem that's involved. Go out there, tell 'em if he's out there, tell 'em I'm ordering him as a police officer to come back in here.

> * * *

> Sir, you have a seat here, lieutenant, or whatever rank you are. I don't like your attitude, sir. You as an officer, you are a police officer,

15

sir, you come into this court, you treat this court with respect. You understand me, sir? Stand up, sir, stand up. You understand me?

*Mr. Brock:* Yes, sir.

*The Court:* Well, now you walk out of here. I didn't create this situation. I don't know if you did or not. He's been your son all your life. All I know is that the jury . . . He had a good trial with a good lawyer and a good verdict, sir, and he's going to jail. And I don't need to have your arrogance, sir.

*Mr. Brock:* Do I have a right to walk out?

*The Court:* You have a right to walk out of here, sir. But you have a right also, you, sir, have to respect this Court of all people.

*Mr. Brock:* I respect the Court.

*The Court:* Okay then. You just leave here with the respect that you deserve this court. And I don't need any of your side glances either, sir. You took care of 'em all your life. If he's bad, it's your problem.

Eighth, the commission found that Judge Moore was also abusive when he sentenced defendant Johnson during a separate proceeding immediately thereafter.

H

The allegations contained in paragraph 25 of the complaint were based on *People v Turner,* Wayne Circuit Court, Criminal Division Case No. 97-2664. The defendant was charged with attempted home invasion and as an habitual offender. He chose to represent himself during trial, with his appointed attorney available to act as his legal advisor. The jury convicted the defendant.[14] The commission made eleven findings

_____

[14] The Court of Appeals reversed the defendant's conviction, finding that the trial court's conduct of repeatedly gagging the defendant in the presence of the jury,
(continued...)

16

of misconduct in this matter.

The first five findings of the commission concern threats made by Judge Moore to gag the defendant and his ordering defendant to be gagged with tape at various points during the trial.

Next, the commission found that during the pretrial conference, Judge Moore made disparaging remarks to the defendant when he inquired about obtaining relief because he had been imprisoned since March. Judge Moore stated:

> What kind of relief? You better go over there and get you an aspirin or Alka Seltzer or maybe some Kaopectate 'cause that's the only relief you're getting. We'll see you when you get back here the 13th.

Third, the commission found that Judge Moore insulted the defendant when the defendant offered to hand him the questions he had mapped out by replying, "I don't need you to hand me anything, diddley boy. My boy, just read what you have."

Fourth, the commission determined that Judge Moore almost immediately thereafter made another derogatory remark, directing the defendant to shut up and telling him that he had "diarrhea of the mouth."

Fifth, the commission found that Judge Moore directed other derogatory remarks toward defendant, calling him a "low life" and a "rat," and inferring that the defendant knew how to commit break-ins by commenting, "Why don't you [defendant]

---

[14](...continued)
making disparaging remarks, and assuming an adversarial posture toward the defendant deprived him of a fair trial. Unpublished opinion per curiam, issued October 29, 1999 (Docket No. 208790).

17

ask a question.  You know a lot more about it apparently than some of the rest of us"[15] when the defendant attempted to question complainant about pulling iron bars off a window.

Sixth, the commission found that Judge Moore frequently interjected during the defendant's presentation of his defense, displaying an antidefense sentiment with his abrasive manner and repeated interruptions.

Seventh, the commission determined that Judge Moore took over the questioning concerning the location of the crime.

Eighth, the commission determined that Judge Moore instructed the prosecutor to object.

## II

The commission made the following conclusions of law, stating that the conduct identified in its findings of fact, individually and collectively, constituted one or more of the following:

> (1) Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Art. 6, § 30, and MCR 9.205;

> (2) Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Art. 6, § 30, and MCR 9.205(C)(4);

> (3) A persistent incompetence or neglectfulness in the performance of judicial duties, contrary to MCR 9.205(C)(5);

> (4) A persistent failure to treat persons fairly with courtesy and respect[,] pursuant to MCR 9.205(C)(6);

> (5) Treatment of persons unfairly,

___

[15] In its decision regarding misconduct, the commission inaccurately quotes Judge Moore as saying "Why don't you (Mr. Turner) *answer the* question."

18

discourteously, or disrespectfully because of race, gender or other protected personal characteristic, contrary to MCR 9.205(C)(7);

(6) A failure to observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

(7) Conduct involving impropriety and the appearance of impropriety, thereby eroding public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;

(8) A failure to respect and observe the law and to conduct oneself at all times in a manner which would enhance the public's confidence in the integrity and impartiality of the judiciary, contrary to the Code of Judicial Conduct, Canon 2B;

(9) A failure to be patient, dignified and courteous to a juror, in violation of the Code of Judicial Conduct, Canon 3A(3);

(10) A failure to be patient, dignified and courteous to litigants, lawyers and others with whom Respondent dealt in an official capacity, contrary to the Code of Judicial Conduct, Canon 3A(3);

(11) Undue interference, impatience and participation in the examination of witnesses; demonstrating a severe attitude toward witnesses; tending to prevent proper presentation of the cause and ascertainment of the truth; failure to avoid a controversial manner and tone in addressing counsel, litigants and witnesses; failing to avoid interruptions of counsel in their arguments; and reaching a premature judgement, in violation of the Code of Judicial Conduct, Canon 3A(8);

(12) Non-adherence to the usual and accepted methods of doing justice, contrary to the Code of Judicial Conduct, Canon 3A(9); and

(13) Failure to treat every person fairly, with courtesy and respect, without regard to a person's race, gender or other protected personal characteristic, contrary to the Code of Judicial Conduct, Canons 2B and 3A(10).

### III

The commission recommended that Judge Moore be suspended

19

for nine months without pay. The commission explained that this recommendation was based on the collective acts of Judge Moore throughout his judicial career, noting that he had received two admonitions and a public censure.[16] The first admonition, which was issued May 22, 1986, arose from five criminal proceedings. Judge Moore was admonished for "displaying obvious sarcasm," demonstrating "a predisposition [for] the guilt of the defendants," "inappropriately expressing sympathy for complainants in criminal cases," "disparaging" defense counsel and denigrating an attorney's professional ability, and improperly treating a witness with "discourtesy, impatience, and a severe attitude." Judge Moore was again admonished on September 7, 1989, for having a private conversation with a police detective during a trial in which the detective was a witness. Judge Moore was publically censured in 1995 for causing a disturbance in the Chief Judge's courtroom while the Chief Judge was conducting a court proceeding. Further, the commission noted that Judge Moore had been reversed or criticized on appeal numerous times for

---

[16] The November 1999 agreement between the examiner and Judge Moore limited the misconduct allegations to the eight criminal cases discussed in parts I (A)-(H) of this opinion. The commission's findings of fact and conclusions of law were limited to the eight cases in the complaint as the agreement provided. This Court's review of the commission's findings of fact and ultimate finding of misconduct involves only the events in those eight cases and not the past behavior of Judge Moore discussed in part III of this opinion. However, the commission did not err in considering Judge Moore's past behavior in its sanction determination. His past behavior is relevant. Moreover, the agreement did not prohibit consideration of that behavior for that purpose.

20

his conduct.[17]

While discussing the standards to be considered in making a recommendation for discipline, the commission noted that the purpose of judicial discipline is not to punish but to maintain the integrity of the judicial process. The commission then examined the factors from *In re Deming*[18] that this Court cited in its order in *In re Brown*[19] and applied them to the present case.[20] Considering each factor, the commission stated as follows:

> (a) Respondent's misconduct is not an isolated instance. It represents a pattern of misconduct continuing throughout Respondent's career and resulting in admonitions, public censure, and repeated criticisms and reversals by reviewing courts. Respondent was warned repeatedly that his conduct was improper. He cannot justifiably assert ignorance of the error of his ways. He has failed

---

[17] The commission attached as an appendix to its recommendation a brief summary of thirty-one appellate cases issued between April 1983 and February 2000 that criticized Judge Moore's conduct.

[18] 108 Wash 2d 82; 736 P2d 639 (1987).

[19] 461 Mich 1291, 1292-1293 (2000).

[20] The factors considered are:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledge or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires. [*Deming, supra* at 119-120.]

to acknowledge the criticisms were valid and has failed to alter conduct.

(b) Respondent's egregious conduct included abusive, berating, and sarcastic remarks; excessive interjections and interference in trial proceedings; assuming a prosecutorial role; expressing pro-prosecutorial and anti-defense sentiment; prejudicing juries; and lack of judicial demeanor. The improper acts were frequent, as reflected by the numerous cases cited in the attached appendix. In some instances, his conduct directly resulted in reversals of convictions of criminal defendants, although as the Court of Appeals specifically noted, there was sufficient, strong, or even overwhelming evidence of a defendant's guilt. *People v Williams,* Michigan Court of Appeals Docket Number 83920, April 16, 1986; *People v Lippett,* Michigan Court of Appeals Docket Number 153716, March 23, 1994; *People v Ford,* Michigan Court of Appeals Docket Number 195964, December 1, 1998.

(c) All incidents of misconduct in the present complaint, except one, occurred in the courtroom while court was in session. The exception occurred in the courtroom during a recess when a few individuals were present. Many incidents were in the presence of the jury.

(d) All acts of misconduct occurred in his official capacity and not in his private life. Therefore, all acts were open to public view.

(e) Except for the comment concerning a witness who supposedly was not wearing a bra, Respondent does not dispute the underlying facts. Respondent has repeatedly denied that any of the acts constitute misconduct. With the benefit of hindsight, Respondent acknowledged at the Formal Hearing on March 13, 2000, that a few of his comments could or possibly should have been worded differently.

(f) Respondent has made no noticeable effort to change or modify his conduct. He received warnings from the Commission and the Court of Appeals and has ignored them. Respondent once expressed a desire to avoid having the Examiner, or the Commission, "coming back at" him and "to avoid a problem" in the future. However, he denied that the specific conduct that was the subject of his statement was "wrong. . . ."

The Commission acknowledges that, in his

22

sanctions brief, Respondent expressed regret. He admits that several of his comments "were inappropriate or ill timed or spoken without thinking, or at the very least, in the limited context presented, do now upon reading or hearing appear to be unacceptable." For those statements he made a "heartfelt and sincere apology." The Commission notes this attempt at damage control follows a finding that Respondent had engaged in serious and continued acts of misconduct.

(g) Respondent has served on the bench for approximately 20 years. Considering his experience and frequent criticisms and reprimands, he should know the requisite standards. He has failed to adhere to the directives of the Commission or alter his conduct in response to criticisms by reviewing courts. Respondent has repeatedly violated those standards.

(h) There have been many prior complaints regarding Respondent as reflected in prior disciplinary proceedings and appellate criticism detailed above.

(i) Respondent's conduct has tainted the integrity of and respect for the judiciary. His abusive comments and demeaning nature have a great negative impact upon members of the public with infrequent exposure to the courts. That other judges typically strive to maintain an unbiased, professional, courteous and dignified manner while on the bench is lost to those whose experience is limited to encounters with Respondent in his courtroom.

(j) There is no charge that Respondent abused his office for personal gain or to satisfy personal desires.

The commission then considered the mitigating and aggravating factors in reaching its recommendation. In addressing the mitigating factors, it noted that Judge Moore had been a "diligent jurist during his 20 years on the bench" and recognized that he often means well. Further, it noted that he had been transferred to the civil division, where he would likely encounter "fewer examples of the darker side of human conduct." In considering aggravating factors, the

23

commission stated that Judge Moore "frequently has failed to distinguish his role as an impartial arbitrator with that of a *quasi* social worker and partisan advocate." Because no previous discipline, criticism, or reversal by a higher court had altered his conduct in anyway, and because he had occasionally expressed disdain for the commission and the Court of Appeals, the commission opined that a significant sanction was required.

IV

The Michigan Constitution provides:

> On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for a conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. The supreme court shall make rules implementing this section and providing for confidentiality and privilege of proceedings. [Const 1963, art 6, § 30(2).]

Pursuant to rules promulgated by this Court, when considering a recommendation of the commission, this Court

> shall review the record of the proceedings and shall file a written opinion and judgement, which may direct censure, removal, retirement, suspension, or other disciplinary action, or reject or modify the recommendations of the commission. [MCR 9.225.]

In reviewing the record de novo, we consider whether the conduct charged and found by the commission is established by the record, whether the conduct is of a nature warranting discipline, and whether the discipline recommended by the commission or some other form of discipline should be imposed. *In re Seitz,* 441 Mich 590, 594; 495 NW2d 559 (1993).

24

MCR 9.205(A) provides that a "judge is personally responsible for his or her own behavior and for the proper conduct and administration of the court in which he or she presides." Further, a judge is guilty of misconduct in office if:

> (1) the judge is convicted in the United States of conduct which is punishable as a felony under the laws of Michigan or federal law;
>
> (2) the judge persistently fails to perform judicial duties;
>
> (3) the judge is habitually intemperate within the meaning of Const 1963, art 6, § 30;
>
> (4) the judge's conduct is clearly prejudicial to the administration of justice;
>
> (5) the judge is persistently incompetent or neglectful in the performance of judicial duties;
>
> (6) the judge persistently fails to treat persons fairly, with courtesy and respect; or
>
> (7) the judge treats a person unfairly, discourteously, or disrespectfully because of the person's race, gender, or other protected personal characteristic. [MCR 9.205(C).]

Conduct in violation of the Code of Judicial Conduct or the Rules of Professional Responsibility may also constitute

> misconduct in office, conduct that is clearly prejudicial to the administration of justice, or another ground for discipline listed in Const 1963, art 6, § 30. The question in every case is whether the conduct complained of constitutes misconduct in office, conduct that is clearly prejudicial to the administration of justice, or another ground of discipline listed in Const 1963, art 6, § 30, not whether a particular canon or disciplinary rule has been violated. All the circumstances are to be considered in deciding whether action by the commission is warranted. [MCR 9.205(E).]

V

Judge Moore filed a petition to reject or modify the

25

commission's recommendation, arguing that the commission's findings of fact and conclusions of law were against the great weight of the evidence, that the commission erred in failing to dismiss the formal complaint, and that he was denied procedural due process by the examiner and the commission. We will address each argument in turn.

A

Judge Moore first argues that the commission's findings of fact and conclusions of law are contrary to the great weight of the evidence. Specifically, Judge Moore disputes that there was any evidence to support the commission's finding in *Eklour* that he had commented that the only reason the prosecution wanted to cross-examine a witness was because she was not wearing a bra. We disagree.

Three witnesses were called during the hearing before the commission to testify concerning this matter: Corrine Shoop, George Serkian, and John Bianco. Ms. Shoop, who was an attorney representing the insurance company the defendant was accused of defrauding, attended the criminal trial. She testified that during a break in the trial, she heard Judge Moore remark to the prosecutor, John Bianco, that the only reason that the prosecutor wanted to cross-examine the witness was because she was not wearing a bra and that Judge Moore was joking and laughing when he made the remark. She further testified that she did not believe that there was anyone in the courtroom when the remark was made besides herself, Mr. Bianco, Judge Moore, and perhaps, a Wayne County sheriff. She stated that she believed that she discussed the comment with

Mr. Bianco.  She also filed a grievance with the commission concerning the remark.[21]

George Serkian represented defendant Eklour during the criminal trial before Judge Moore.  He testified that he did not hear Judge Moore make the remark.  When asked whether he was in the courtroom during the recess in which the remark was made, he responded that if the prosecutor was in the courtroom, he was in the courtroom.  He testified that this representation was based on both his policy of always being in the courtroom when the prosecutor is present and his memory.  However, he acknowledged that when he met with the examiner, he indicated that he had no present recollection of some of the specific things from the trial about which he was asked during the meeting.

John Bianco, the prosecutor who tried the *Eklour* matter, testified that he "absolutely did not hear that comment."  He further stated that he had some vague recollection of Ms. Shoop being upset about something that she thought the judge had said, but he could not recall any specifics regarding her concern or their conversation.  He vaguely remembered making a motion to recall the witness.

Having reviewed the testimony, we cannot find any fault with the commission's implicit determination that Ms. Shoop's testimony was the most credible.  Consequently, its finding that Judge Moore made this remark was not against the great weight of the evidence.

---

[21] Her grievance also include references to conduct during the course of the trial.

Judge Moore next argues that the preponderance of the evidence fails to support a finding that his comments and participation in the eight trials constituted misconduct or conduct prejudicial to the administration of justice and that the commission erred in failing to dismiss the formal complaint. Judge Moore alleges that the commission failed to review the incidents within the full context of the trial proceedings and that his statements, comments, and questions are taken out of context. We agree that the larger context of a few of the remarks calls the commission's findings concerning these remarks into question. However, we disagree that the complaint should have been dismissed because there is sufficient evidence to sustain the commission's remaining findings of misconduct.

Two of the findings that are questionable stemmed from *People v White*.[22] The commission found that Judge Moore committed misconduct during jury selection by giving a hypothetical example that named the defendant and was modeled on the facts of the case. We think it important to note that this example occurred during the trial court's attempt to distinguish between the quality and quantity of evidence and an extended discussion concerning whether the jurors would be able to convict or acquit on the basis of one witness' testimony or ten witnesses' testimony. While the trial court

---

[22] This Court peremptorily reversed the Court of Appeals determination that the trial court's conduct had denied defendant a fair trial. See footnote 5.

could have more carefully and effectively made this point, we do not believe that the example, when considered within the context in which it was made, improperly encouraged the prospective jurors to find the defendant guilty.

The commission also determined that Judge Moore had spontaneously commented on the defendant's personal interest in the case and the effect it would have on his credibility. This comment was made during the preliminary instructions to the jury, as Judge Moore was explaining how to judge the weight and credibility of the witnesses' testimony. We disagree with the commission's characterization of this remark as a "spontaneous[]" comment on the defendant's personal interest in this case and do not find that it constituted misconduct.

Another finding that we believe is questionable is the commission's determination that in *People v Payton*, Judge Moore improperly deferred his role as judge to the prosecutor by asking the prosecutor if he was in error in some way. See part II (C). This remark was made during a discussion of whether one could impeach a witness with something the witness did not mention in an earlier statement. At the beginning of this discussion, Judge Moore asked both defense counsel and the prosecutor to correct him if he was wrong. In the midst of the discussion, he asked defense counsel to tell him if he was wrong. Further, it appears that defense counsel may have partially prevailed in his argument because he was permitted to question the witness about an "unknown man" mentioned in his statement. Therefore, we disagree that this remark

constituted an instance of improperly deferring to the prosecution.

The last finding that we question is the commission's determination that Judge Moore committed misconduct by advising the eight-year-old witness who testified that if anyone gave him difficulties about testifying, he should refer that person to Judge Moore.[23] While, in the future, Judge Moore should be cognizant of the impression that such actions might give the jury, we find that Judge Moore's conduct in this instance was motivated by his concern for a young child required to testify against his father concerning a crime the father committed against the child's mother. Therefore, we do not consider these actions to be misconduct for which Judge Moore should be sanctioned.

Apart from these specific findings that we question, we hold that there is sufficient evidence to support the remaining findings of fact made by the commission. Therefore, the commission did not err in failing to dismiss the formal complaint.

C

Judge Moore also argues that he was denied procedural due process by the examiner and the commission. This argument is premised on five separate allegations.[24]

---

[23] Judge Moore also commented "I'm gonna love you son" when he discovered that his wife and the witness shared the same birthday. He also gave the witness some Tootsie Rolls at the conclusion of his testimony.

[24] Judge Moore actually raises six bases for his due process argument. However, because the third and sixth bases
(continued...)

First, Judge Moore contends that he was denied due process by the examiner's unsolicited and premature filing of a sanctions brief. We determine that this argument is without merit. There is nothing to suggest that the receipt of the sanctions brief before the commission's decision regarding misconduct improperly influenced the commission in any way. Further, while the commission and Judge Moore agreed to dismiss many of the allegations in the complaint and proceed on the remaining allegations, these other matters were certainly relevant to determining the appropriate sanction to be awarded upon a finding of misconduct.

Second, Judge Moore asserts that he was denied due process by the commission's failure to consider any of the eight underlying criminal jury trial transcripts as a whole. We find that this argument is also without merit. While we disagree with a few of the commission's findings because of the context of the remarks, the complete transcripts from all eight trials were part of the record considered by the commission.

Third, Judge Moore argues that he was denied due process by the commission's failure to limit the issues considered to those delineated in the November 1999 agreement. Specifically, Judge Moore challenges the references to appellate cases that have criticized Judge Moore because he had no opportunity to address or refute these other cases. We disagree that defendant was denied due process by the

[24](...continued)
are related, we have combined them.

consideration of these cases in the determination of the appropriate sanction. Several of the factors we have identified as relevant in making a recommendation of discipline refer to previous conduct on the part of the judge, including whether the conduct is an isolated incident or part of a pattern; the nature, extent, and frequency of the conduct, whether there have been prior complaints about the judge, and whether the judge has demonstrated an effort to modify his conduct. *In re Deming,* 108 Wash 2d 82, 119-120; 736 P2d 639 (1987). The commission therefore appropriately considered these relevant prior matters in its sanction determination. Nothing in the November 1999 agreement between the examiner and Judge Moore prohibited consideration of those matters for purposes of determining the sanction.

The commission's findings of fact do not support Judge Moore's claim that the misconduct determination was contaminated by consideration of matters outside the complaint in violation of the November 1999 agreement. The commission's findings of fact provide adequate support for both the finding of misconduct and for the sanction we impose, without taking into account the prior extraneous matters.

Fourth, Judge Moore contends that he was denied due process by Judge William Murphy's participation in the commission proceedings because Judge Murphy was a member of the Court of Appeals panel that decided *People v Johnson,* one of the eight criminal cases upon which the findings of

misconduct in the present matter are based.[25] The *Johnson* decision was issued on July 21, 2000, three days after the commission issued its decision regarding misconduct. We note that paragraph one of the agreement entered into by the parties specifically provided:

> The Examiner and Respondent, through his counsel, shall stipulate and request that any members of the Commission who may have previously recused themselves from participating in any discussion or decision-making relating to Formal Complaint No. 58 be relieved of such recusal and hereinafter participate and vote on all matters. The Commission's Decision shall be made pursuant to MCR 9.221.

Pursuant to this provision, Judge Moore consented to the participation of all members in all matters. Therefore, we hold that Judge Moore was not denied due process by Judge Murphy's participation in the proceedings.

Fifth, Judge Moore contends that he was denied due process by the examiner's attempt to solicit other claims or grievances against him by way of a letter mailed to an unknown number of members of the criminal appellate bar. The commission granted Judge Moore's motion to restrain the examiner from soliciting claims and ruled that the examiner would not be permitted to utilize any of that information during the hearing.[26] Therefore, we conclude that Judge Moore was not denied due process.

---

[25] The Court of Appeals determined that the trial court's conduct in *Johnson* deprived defendant Johnson of a fair trial and reversed his convictions.

[26] The commission denied the portion of the motion requiring the examiner to disclose to whom the letter was sent and any responses received.

33

Having, in our review of Judge Moore's arguments, primarily addressed whether the commission's factual findings are supported by the record, we now consider whether the conduct is of a nature warranting discipline and, if so, what level of discipline should be imposed.

A

The commission determined that Judge Moore's conduct violated numerous provisions of the court rules and Code of Judicial Conduct. We agree with some, but not all, of the Judicial Tenure Commission's conclusions of law. In particular we disagree that Judge Moore's conduct constituted "persistent incompetence [and] neglectfulness."

Specifically, the Code of Judicial Conduct provides that "[a]t all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary" and that "a judge should treat every person fairly, with courtesy and respect." Canon 2(B). Further, "[a] judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . ." Canon 3(A)(3). Additionally, Canon 3(A)(8) provides:

> A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but the judge should bear in mind that undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on the judge's part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of truth in respect thereto.

34

> Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies that are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, the judge should avoid a controversial tone.
>
> A judge should avoid interruptions of counsel in their arguments except to clarify their positions, and should not be tempted to the unnecessary display of learning or a premature judgment.

We conclude that Judge Moore's conduct frequently violated the Code of Judicial Conduct and demonstrates, on those occasions, a lack of judicial temperament. While the incidents vary in severity, and some may ostensibly seem innocuous, misconduct may be proven by "evidence of an accumulation of small and ostensibly innocuous incidents which, when considered together, emerge as a pattern of hostile conduct unbecoming a member of the judiciary." *In re Mikesell,* 396 Mich 517, 539; 243 NW2d 86 (1976), quoting *In re Kelly,* 238 So 2d 565, 566 (Fla, 1970). Judge Moore's conduct demonstrates a pattern of persistent interference in and frequent interruption of the trial of cases; impatient, discourteous, critical, and sometimes severe attitudes toward jurors, witnesses, counsel, and others present in the courtroom; and use of a controversial tone and manner in addressing litigants, jurors, witnesses, and counsel. This conduct frequently resulted in appellate reversal of trials over which he had presided. Such behavior undermines public confidence in the integrity and impartiality of the judiciary and is clearly prejudicial to the administration of justice. Therefore, we conclude the conduct is of a nature that

35

warrants discipline.

                                          B

The commission recommended that Judge Moore be suspended for nine months without pay. In so recommending, the commission assessed previous discipline imposed on Judge Moore and applied the *Deming* factors cited by this Court in *In re Brown*, 461 Mich 1291, 1292-1293 (2000). See part III. We principally agree with the commission's analysis of the case under the *Deming* factors and that Judge Moore's history of such behavior requires a significant sanction. However, we have disagreed with a few of the findings of misconduct on which the sanction was based. Further, we agree with the commission that Judge Moore has been a diligent jurist during his twenty years on the bench and that he often means well, even where his judicial behavior has been inappropriate. Therefore, we modify the commission's recommendation and order that Judge Moore be suspended for six months without pay.

Pursuant to MCR 7.317(C)(3), the Clerk is directed to issue the judgment order forthwith.

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

*In re* HONORABLE WARFIELD MOORE, JR.,
Judge of the Third Circuit Court,
Detroit, Michigan.

No. 112416

_____

CAVANAGH, J. (*concurring*).

I would not depart from the Judicial Tenure Commission's findings of fact and conclusions of law and, therefore, would impose the recommended sanction, a nine-month suspension without pay.

KELLY, J., concurred with CAVANAGH, J.