650 N.W.2d 323 (2002)
In re Hon. Warfield MOORE, Judge of the Third Circuit Court, Detroit, Michigan.
Docket No. 122005.
Supreme Court of Michigan.
August 19, 2002.
On order of the Court, the petition for the appointment of a master is considered, and it is GRANTED. The Honorable Karl V. Fink, Retired Judge of Washtenaw Circuit Court, is designated as master to consider Formal Complaint No 69.
WEAVER, J., concurs and states as follows:
I concur in the order because under MCR 9.210(B) this Court is apparently required to appoint a master upon request by the Judicial Tenure Commission. However, this case draws the validity of the rule into question. In proceedings related to Formal Complaint No. 58, the commission filed in October 2000 a recommendation for discipline. The recommendation pertained to eight separate cases over which the respondent judge had presided. Examining these examples of his performance, we found a "pattern" of intemperate behavior. We suspended him for six months without pay and challenged him to improve the manner in which he conducted himself. In re Moore, 464 Mich. 98, 626 N.W.2d 374 (2001). In issuing that sanction, we recognized that "the purpose of judicial discipline is not to punish but to maintain the integrity of the judicial process." Id. at 118, 626 N.W.2d 374. Presumably that would be accomplished if Judge Moore's deportment on the bench after imposition of the last sanction conformed in every way with the canons of judicial ethics. Now, without an indication that Judge Moore's conduct has been less than proper since the sanction, we are asked to appoint a master to examine allegations of misconduct similar to those for which Judge Moore was sanctioned and occurring before the sanction. Common sense and discretion suggest that appointment of a master is not appropriate under the information before us.
Whether or not this Court appoints a master does not inhibit or prohibit the Judicial Tenure Commission from investigating and proceeding with its constitutional authority and responsibility. The commission is still permitted to proceed with its own hearing, MCR 9.210(A), MCR 9.211, and may still present this Court with a recommendation, which this Court may accept, reject, or modify.[1]
The Court should hold public hearings to consider whether to exercise its rule-making authority[2] and amend MCR 9.210(B). It should examine whether this Court should be bound to appoint a master in every instance that one is requested by the Judicial Tenure Commission, and whether the current time limits are appropriate.[3]
*324 YOUNG, J., concurs and states as follows:
Because I read MCR 9.210(B) as requiring that this Court appoint a master upon request of the Judicial Tenure Commission, I concur in the order. However, I also believe that the statements of Justices Weaver and Markman raise very important questions that merit serious consideration by the Judicial Tenure Commission.
CORRIGAN, C.J., joins in the concurring statement of Justice YOUNG.
MARKMAN, J., dissents and states as follows:
I respectfully choose not to grant the request of the Judicial Tenure Commission (JTC) to appoint a master to investigate certain allegations of misconduct against Judge Warfield Moore.[1] Instead, I would direct the JTC to explain why Judge Moore should now be faced with discipline for alleged misconduct predating this Court's earlier discipline of him and, with one exception, even predating the earlier JTC recommendation for discipline. In my judgment, the allegations here are entirely cumulative of the allegations set forth by the JTC in its recommendation in October 2000 that resulted in a six-month suspension without pay in May 2001. In re Moore, 464 Mich. 98, 626 N.W.2d 374 (2001).
This Court's previous discipline of Judge Moore, in which I joined, was predicated upon findings of misconduct by Judge Moore occurring in the course of eight separate trials. We concluded that Judge Moore's conduct demonstrated a "pattern of persistent interference in and frequent interruption of the trial of cases; impatient, discourteous, critical, and sometimes severe attitudes toward jurors, witnesses, counsel, and others in the courtroom; and use of a controversial tone and manner in addressing litigants, jurors, witnesses, and counsel." Id. at 132-133, 626 N.W.2d 374. We further concluded that, "[w]hile the incidents vary in severity and some may ostensibly seem innocuous," judicial misconduct may be proven by such incidents where they produce a "pattern of hostile conduct unbecoming a member of the judiciary." Id. at 132, 626 N.W.2d 374. The present allegations of misconduct raised by the JTC are clearly a part of the same "pattern" of misconduct by Judge Moore. Such allegations involve exactly the same type of courtroom misconduct as in the recommendation of October 2000, and such allegations undoubtedly would have been joined in this recommendation had the JTC been aware of them at the time. Had the latter occurred, proof of the same type of misconduct by Judge Moore in nine, rather than eight, trials, would almost certainly have resulted in the same discipline *325 of a six-month suspension by this Court, at least in my judgment.[2]
Concerning the JTC's sole allegation of misconduct by Judge Moore arising after the recommendation of October 2000 (but before this Court's discipline)consisting of a very brief exchange between Judge Moore and an attorney who was moving his disqualification (which motion was granted)I view this, at worst, as more of the same, part of the same "pattern" of misconduct by Judge Moore that served as the basis for his discipline. Even assuming that such alleged misconduct cannot be seen as part of the same "pattern," I hardly see a need to appoint a master to investigate what amounted to an estimated one-minute courtroom exchange. If the JTC deems this exchange worthy of investigation, I am confident that it can carry out such investigation without having to employ the financial and other resources of a master.[3]
I recognize that "double jeopardy" is inapposite in the judicial discipline context, and that there is no doctrine of "res judicata" that bars the present JTC request. However, I believe that it is fundamentally unfair that Judge Moore should have to face discipline once again for misconduct that predated this Court's previous discipline, and that was clearly a part of the *326 same "pattern" of misconduct underlying that discipline.
I choose to exercise the judgment to which I believe members of this Court are entitled under MCR 9.210(B) to deny at this time the request of the JTC to impose what appears to be a second discipline on Judge Moore for the same misconduct. He has already been disciplined once, quite severely and quite properly, for a "pattern" of misconduct. He should not now again be faced with discipline for conduct that is unquestionably a part of this same "pattern," and that predated his discipline by this Court. Rather, now that his six-month suspension without pay has been served, he is entitled to a fresh start.[4]
NOTES
[1] On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire, or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of the justice. [Const. 1963, art. 6, § 30.]
[2] Const. 1963, art. 6, § 30, which establishes the judicial tenure commission, provides "[t]he supreme court shall make rules implementing [§ 30] and providing for confidentiality and privilege of proceedings."
[3] Note that MCR 9.210(B)'s current requirement of appointing a master within fourteen days has not been followed in this case.
[1] In my judgment, MCR 9.210(B) is internally inconsistent in its description of this Court's authority with regard to the appointment of masters. Although the second sentence in this provision appears to require such appointment when sought by the JTC, the first sentence expressly references a "request ... to appoint a master." The use of the emphasized term does not usually connote a matter over which the requestee, i.e., this Court, lacks any judgment or discretion. If, however, the majority construes MCR 9.210(B) as so depriving this Court, and views us as being obligated to grant any JTC request for the appointment of a master, then I would favor a change in this rule. I view this Court's relationship with the JTC under MCR 9.210(B) as something other than a ministerial one in which we automatically appoint masters at its "request." In this regard, I note the opening words from one previous order of this Court granting a JTC request for the appointment of a master: "Disposition: Request for the appointment of a master is considered and it is granted." In re Gehrke, 549 N.W.2d 565 (1996) (emphasis added).
[2] Indeed, in this regard, it is important to understand that this Court identified forty-six specific instances of misconduct on Judge Moore's part occurring in the course of the eight trials we examined. Id. at 100-115, 125-128, 626 N.W.2d 374. It is inconceivable to me that any member of this Court could have viewed these forty-six instances of misconduct, and only these forty-six instances, as the totality of Judge Moore's misconduct, rather than as evidence of a larger "pattern" of misconduct on his part. Indeed, the JTC itself concluded in its earlier recommendation of discipline:

(a) Respondent's misconduct is not an isolated instance. It represents a pattern of misconduct continuing throughout Respondent's career and resulting in admonitions, public censure, and repeated criticisms and reversals by reviewing courts....
* * *
(h) There have been many prior complaints regarding Respondent as reflected in prior disciplinary proceedings and appellate criticism detailed above. [Id. at 119-120, 626 N.W.2d 374.]
Further, as this Court stated in Moore:
The November 1999 agreement between the examiner and Judge Moore limited the misconduct allegations to the eight criminal cases discussed in parts 1(A)-(H) of this opinion. The commission's findings of fact and conclusions of law were limited to the eight cases in the complaint as the agreement provided. This Court's review of the commission's findings of fact and ultimate finding of misconduct involves only the events in these eight cases and not the past behavior of Judge Moore discussed in part III of this opinion. However, the commission did not err in considering Judge Moore's past behavior in its sanction determination. His past behavior is relevant. Moreover, the agreement did not prohibit consideration of that behavior for that purpose. [Id. at 117, n. 16, 626 N.W.2d 374.]
It is hardly remarkable, or beyond this Court's anticipation, that the JTC now is able to identify additional instances of alleged misconduct on Judge Moore's part that preceded the JTC's earlier recommendation and this Court's earlier discipline. Were such allegations of a different kind from the earlier ones, or even of a different magnitude, were these allegations not so clearly a part of the exact same "pattern" of misconduct that justified this Court's discipline of Judge Moore, I would view the JTC's request far differently.
[3] Even after this Court appointed a master in connection with Judge Moore in response to the previous JTC request for a master, the JTC conducted its hearings before the full nine-member commission rather than before the master. Id. at 99, 626 N.W.2d 374. This, despite the fact that the previous request involved far more numerous allegations of misconduct than are involved in the present request. Thus, by not granting the JTC's request to appoint a master here, this Court would hardly be standing in the way of a JTC investigation if the JTC remained determined to proceed in this direction.
[4] Absent any further explanation by the majority, it is unclear to me (and presumably will be to the JTC as well) whether the majority's position is predicated upon its disagreement with my view that the proposed investigation by a master is a dubious use of public resources, and unfair to Judge Moore, or whether it views justices as lacking judgment or discretion in the appointment of a master under MCR 9.210(B). Finally, I concur with Justice Weaver's separate statement that it is difficult to understand how the traditional objectives of judicial discipline would be promoted by granting the present request of the JTC.