CAVANAGH, J.
(dissenting). Viewing all the alleged conduct at issue here, I cannot conclude that respondent’s removal is warranted. Much more egregious behavior on the part of judges has been met with far less sanction than permanent removal. See In re Hathaway, 464 Mich 672; 630 NW2d 850 (2001) (suspending the judge for six months without pay for the judge’s gross mishandling of three cases and overall “lack of industry”); In re Brown (After Remand), 464 Mich 135; 626 NW2d 403 (2001) (suspending the judge for fifteen days without pay after finding that the judge misused the prestige of his office in addition to having four previous instances of misconduct); In re Moore, 464 Mich 98, 132-133; 626 NW2d 374 (2001)[1] (characterizing the judge’s “pattern of persistent interference in and frequent interruption of the trial of cases; impatient, discourteous, critical, and sometimes severe attitudes toward jurors, witnesses, counsel, and others present in the courtroom; and use of a controversial tone and manner in addressing litigants, jurors, witnesses, and counsel” as warranting a six-month suspension without pay); and In re Bennett, 403 Mich 178; 267 NW2d 914 (1978) (refusing to remove the judge from the bench, despite finding that he engaged in “demonstrably serious” intemperance, instead imposing a one-year suspension without pay).
In In re Seitz, 441 Mich 590; 495 NW2d 559 (1993), on which the Judicial Tenure Commission (JTC) relies, *22 this Court removed the judge from office at the JTC’s recommendation. I find that case easily distinguishable. Judge Seitz exhibited such unfathomable conduct toward his colleagues and staff for over ten years that it took this Court twenty-seven pages to delineate it. Id. at 594-621. He also engaged in felonious conduct by installing a wiretap on his phone. Id. at 597-599. Moreover, he abused his contempt power by deliberately ordering a person to ignore an administrative order of the chief judge and follow Judge Seitz’s contradictory order- instead. When the person refused to do so, Judge Seitz had him arrested and brought to the courtroom. There, the judge performed a mock hearing devoid of due process and had the person jailed. Id. at 599-604. Judge Seitz also had unprofessional personal relationships with his staff. Id. at 604-611.
The JTC points to one paragraph in Seitz, supra at 622, that pertained to the judge’s failure to file reports with the State Court Administrative Office as support for its removal recommendation. But Judge Seitz’s failures in that regard paled in comparison to his other conduct, and it is impossible to believe that his failure to file several reports alone would have resulted in his removal from the bench. Similarly here, where the two allegations are that respondent lied about the accident and failed to properly manage his docket, the JTC’s removal request is extremely harsh.
The JTC relies on two cases, In re Ferrara, 458 Mich 350; 582 NW2d 817 (1998), and In re Ryman, 394 Mich 637; 232 NW2d 178 (1975), for the proposition that lying, by itself, is sufficient to remove respondent from the bench. But in both cited cases, more was at issue. For instance, in Ferrara, the misconduct charges stemmed from the revelation of eleven tapes on which the judge was recorded lashing horrific racial and ethnic *23 slurs at or about people in both her personal and professional life. This Court found that irrespective of the tapes, Judge Ferrara’s conduct surrounding the investigation was grounds for removal. For instance, Judge Ferrara told the media and the JTC that the tapes were fabricated, and she attempted to admit a fraudulent letter twice, the second time after her first attempt was rejected. Additionally, the judge’s conduct during the formal hearing was so “ ‘inappropriate, unprofessional, and demonstrative of] a lack of respect for the judicial discipline proceedings,’ ” that this Court found the incidents too numerous to recount. Ferrara, supra at 370 (citation omitted).
Because of the severe and obvious nature of the judge’s lies and her continuing disrespect for the judiciary, this Court concluded that removal was warranted, stating:
We adopt the commission’s recommendation and find respondent’s untruthful and misleading statements to the public and press, her attempt to commit a fraud on the Court by twice attempting to introduce the Avela Smith letters, and her unprofessional and disrespectful conduct during each stage of the proceedings to constitute misconduct in violation of the court rules and judicial canons. [Id. at 372.]
Similarly, Ryman, supra, involved issues of backdating and improper signing of deeds, false testimony, allowing a court clerk to perform a magistrate’s duties, and continuing the practice of law after becoming a judge. Ryman, supra at 642-643. In my opinion, neither Ferrara nor Ryman supports the JTC’s assertion that a suspected lie is sufficient to remove a judge from office.
In sum, I do not believe there is support for permanently removing respondent from office. It seems that where a judge has been removed from office at least in *24 part for lying, the fact that the suspected lies were indeed lies was uncontroverted. Here, though, while respondent’s story about the accident is undeniably suspicious, there is no proof that respondent lied. Without more than speculation that respondent was being untruthful in denying that he drank before he drove, the most severe punishment hardly seems fitting.
Additionally, I do not think that the JTC adequately supported a finding that respondent’s admitted alcoholism caused his perceived administrative failures. The logic behind the asserted causal connection was flawed: even though respondent admits abusing alcohol, it does not necessarily follow that his shortcomings on the job are related to that abuse. The expert testimony did nothing to assist in establishing the link between alcohol abuse and work performance. If anything, Dr. Miller’s testimony blurred the connection by pointing to a possible obsessive-compulsive disorder as the cause of respondent’s work-related problems.
In any event, respondent had plausible explanations for at least some of his work-related behavior. And no one has ever seen respondent drinking or drunk on the job, including his long-time clerk. No attorney testified negatively about respondent’s behavior in court, and some offered reasons for case delays that were totally unrelated to respondent. And notably, the JTC admitted at oral argument that its inclusion of these work-related shortcomings were but “a footnote” to the gravamen of its investigation, the accident.
I, therefore, cannot accept the JTC’s recommendation of removal. Although I believe that its finding that the crash was alcohol-related is supported on the record, a much lesser sanction is warranted, and the sanction should be tailored to that particular event. As *25 such, I would suspend respondent, without pay, for a period of fifteen months, until May 1, 2006.
In light of my conclusions, I do not see grounds for imposing the costs of the JTC’s prosecution on respondent, particularly in light of its admission that its request for reimbursement is unprecedented and unsupported by the court rules.

 I concurred, writing that I would have imposed the sanction of nine months without pay recommended by the Judicial Tenure Commission.