Per Curiam.
This judicial disciplinary matter is before this Court after remand to the Judicial Tenure Commission (jtc) to determine whether statements made by respondent following an automobile accident resulted in judicial misconduct that was clearly prejudicial to the administration of justice. In In re Brown, 461 Mich 1291 (2000), this Court set forth several factors that were among the criteria to be used in evaluating judicial discipline cases. We then remanded the present matter to the jtc for an application of the suggested factors to the facts of this case. The JTC, in a June 23, 2000 supplemental decision and recommendation, found that respondent was “attempting to use the prestige of [his] office to gain a personal advantage” and, thus, recommended a sanction of suspension from the discharge of all judicial and administrative duties without pay for a period of fifteen days. Upon review, we hereby adopt the jtc’s recommended sanction of suspension from the discharge of all judicial and administrative duties without pay for a period of fifteen days.
i
These proceedings arise out of statements made by 50th District Court Judge Christopher C. Brown, respondent, following an automobile accident involving respondent and another driver. The jtc filed a *137 complaint and an evidentiary hearing was held. Following the hearing, the master concluded in a report that respondent did not abuse his office. The jtc’s examiner then filed written objections to the report with the JTC. On review, the jtc made the following findings of fact:
(1) Respondent, at all times hereinafter mentioned, was a Judge of the 50th District Court in the City of Pontiac, County of Oakland, State of Michigan.
(2) Respondent was involved in an automobile accident with Sue Lambouris on April 26, 1996.
(3) The Pontiac Police Department was notified of the accident, and that officers Darryl Cosby and Craig Pesco responded to the location of the accident.
(4) Respondent knew police officer Darryl Cosby.
(5) Respondent told the police officers that Sue Lambouris was speeding. Specifically, Respondent stated that Mrs. Lambouris was “doing 85 miles per hour.”
(6) Respondent requested that Mrs. Lambouris’ name be “run on L.E.I.N. [Law Enforcement Information Network] and ticketed.”
On the basis of its findings of fact, which we adopt for purposes of this per curiam opinion, the JTC determined that respondent was “attempting to use the prestige of [his] office to gain a personal advantage” and that such conduct was “clearly prejudicial” to the administration of justice in violation of the Code of Judicial Conduct, Canons 1, 2A, 2B and 2C. The JTC then recommended that respondent be suspended from the discharge of all judicial and administrative duties without pay for fifteen days.
Upon review of the jtc’s decision and recommendation, this Court remanded this matter to the jtc for *138 the “articulation of standards of judicial discipline, and for the application of those standards to the instant case.” In re Brown, supra. As we stated in that case, the development of standards by the jtc will better enable the jtc to respond to “equivalent cases in an equivalent manner.” Furthermore, the application of standards by the jtc will allow this Court to more meaningfully review the jtc’s disciplinary recommendations. In Brown, supra, we articulated several factors that were among the criteria to be used in evaluating judicial discipline cases. The recommended factors are as follows:
(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
(2) misconduct on the bench is usually more serious than the same misconduct off the bench;
(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance propriety;
(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship. [461 Mich 1292-1293.]
*139 After remand, the jtc filed a supplemental recommendation. In this recommendation, the jtc determined that respondent was “attempting to use the prestige of [his] office to gain a personal advantage.” Consequently, the JTC again recommended that this Court suspend respondent from the discharge of all judicial and administrative duties for a period of fifteen days. The JTC, however, did not expressly apply the recommended factors as set forth in In re Brown for the reason that its membership had changed between the original recommendation and the remand. Therefore, before we “adopt, reject, or modify” the JTC’s recommended discipline, we will engage in a brief analysis of the Brown factors as applied to Judge Brown himself.
n
Upon review, we conclude that factors 1, 2, 4, and 5 are relevant to this case. In particular, factors 1 and 4 support the JTC’s recommended discipline of respondent. Pursuant to factor 1, we find that respondent’s conduct was part of a pattern or practice of misconduct rather than an isolated instance of misconduct. As the jtc stated in its recommendation for discipline, respondent had been admonished by the JTC on four prior occasions for acts of misconduct.[1] Additionally, pursuant to factor 4, respondent’s conduct implicated the appearance of impropriety. The record shows that respondent knew one of the investigating officers who arrived at the scene. This existing relationship, *140 coupled with respondent’s attempted direction to the officer concerning the type of investigation that he should conduct with regard to the other driver, gave rise to an appearance of impropriety and had the potential to erode the public’s confidence in the judiciary.[2]
On the other hand, factors 2 and 5 mitigate against increasing respondent’s sanction. Pursuant to factor 2, it is important to highlight that the misconduct at issue arose out of statements made pursuant to an automobile accident. The misconduct did not occur while respondent was on the bench. Additionally, pursuant to factor 5, the remarks made by respondent appear to have been made spontaneously and under at least some stress, with respondent having just been involved in an automobile accident. When the police officers arrived, respondent told the officers that Mrs. Lambouris was speeding at eighty-five miles an hour. With regard to this remark, the JTC found that “[Respondent knowingly made a false statement.” However, pursuant to the circumstances of this case, this Court concludes that this remark was merely a speculation concerning the rate of speed of the other driver. Concerning respondent’s request that the *141 officers search Mrs. Lambouris’ name in the LEIN system and ticket her, we reach the same conclusion. Respondent’s remark was merely a spontaneous reaction in the immediate aftermath of an automobile accident. After weighing the above factors, and applying them to the circumstances of this case, we believe that respondent’s past disciplinary indiscretions, as well as the appearance of impropriety that resulted from respondent’s statements to the police officers, one of whom he knew, regarding the type of investigation that the officers should engage in was sufficient misconduct to warrant the adoption of the JTC’s recommendation of discipline. Thus, we hold that respondent be suspended from the discharge of all judicial and administrative duties without pay for a period of fifteen days.
Pursuant to MCR 7.317(C)(3), the Clerk is directed to issue the judgment order forthwith.
Cavanagh, Weaver, Kelly, Taylor, Young, and Markman, JJ., concurred.

 Even if the dissent is correct that respondent’s behavior is not properly characterized as part of a “pattern or practice” of misconduct, there is nothing at all inappropriate in the jtc taking into consideration in its proportionality decisions altogether unrelated instances of misconduct.

 We do not disagree with the dissent’s characterization of the rules of conduct with regard to “judge-victims.’-’ Post at 145. However, unlike the dissent, we believe that respondent’s conduct went well beyond a mere “reportjing] the underlying facts involved in the crime.” Post at 145. Rather, in this case, the respondent directed the officer to take two very specific actions: (a) run Ms. Lambouris’ name through the lein system, and (b) issue Ms. Lambouris a ticket. Though a fine line cannot always be drawn in these matters, the respondent’s direction to the officer, in our judgment, was not in the nature of a mere call to investigation, it was not simply a spontaneous expression of anger or pique, and it was more than a generalized call to the officer to do something about an unfortunate situation. Rather, when made to an officer who was aware of respondent’s judicial status, such direction, in our opinion, invoked respondent’s judicial status in an inappropriate manner.