*Order Entered June 19, 2003:*

*In re* BROWN, No. 123687. On order of the Court, the Judicial Tenure Commission has issued a Decision and Recommendation for Discipline, and the Honorable Helen E. Brown has consented to the Commission's findings of fact, conclusions of law and recommendation of public censure.

We are called on in this case to discipline a judge for the two ethical transgressions outlined below. One of the situations presented relates to the respondent's involvement with a charitable organization. The respondent has volunteered as a part of the consent resolution of this matter to refrain from participating in charitable activities that would otherwise be well within those allowed by our Code of Judicial Conduct. Thus, while we adopt the findings and conclusions of the Judicial Tenure Commission, this should not be interpreted in any way as discouraging members of the judiciary from participating in civic and charitable activities in conformance with Canon 5B of the Code of Judicial Conduct, such as forming a civic or charitable organization, serving on the board of directors of such an organization, or attending a charity fundraiser.

As we conduct our de novo review of this matter, we are mindful of the standards set forth in *In re Brown,* 461 Mich 1291, 1292-1293 (2000):

> [E]verything else being equal:
>
> (1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
>
> (2) misconduct on the bench is usually more serious than the same misconduct off the bench;
>
> (3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
>
> (4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
>
> (5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
>
> (6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;

(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.

The JTC should consider these and other appropriate standards that it may develop in its expertise, when it offers its recommendations.

In this case those standards are being applied to the following findings and conclusions of the Judicial Tenure Commission, which we adopt as our own:

1. Respondent was a judge of the 3rd Circuit Court, Family Division, in the City of Detroit, Wayne County, Michigan at all relevant times mentioned.

2. As a judge, Respondent is subject to all of the duties and responsibilities imposed on her by the Michigan Supreme Court, and is subject, at a minimum, to the standards for discipline set forth in MCR 9.104 and MCR 9.205.

3. The Commission has conducted a preliminary investigation of certain grievances filed against Respondent, which are identified as Grievance Nos. 01-13491, 01-13598, 01-13717 and 02-13858 (collectively referred to as "Investigated Grievances").

4. On March 8, 2002, the Commission provided notice to Respondent of the charges being made in the Investigated Grievances pursuant to then-MCR 9.207(C), in what is commonly referred to as a 28-day letter.

5. On June 13, 2002, the Commission issued a supplement to the 28-day letter to Respondent.

6. The Commission and the Respondent have engaged in negotiations to resolve this matter. As a result of those negotiations, Respondent has consented to the resolution of this matter through an order of public censure by the Supreme Court.

7. The recommendation for order of public censure is based on the following facts:

A. Respondent is the founder and Chairman of the Board of Trustees of the Coalition for Family Preservation ("Coalition"), a Michigan nonprofit corporation.

1) On Friday, October 5, 2001, the law firm of Garber & Mayers, P.L.L.C. held a golf outing fundraiser for that organization.

2) On or before September 5, 2001, Garber & Mayers presented a number of the invitations for the event to Respondent by delivering them to her staff.

3) The invitation states that Respondent sponsored the golf outing.

4) The invitation also identifies the Coalition for Family Preservation as a "501(c)(3) non-profit organization," when it did not yet

[have] such status under section 501(c)(3) of the Internal Revenue Code[.]

5) The program for the event prominently identifies Respondent as the "Coalition Founder."

6) A sign recognizing donors to the golf outing and a handout identifying the prizes for the outing, which were posted at the event, prominently identify Respondent as the "Coalition Founder."

7) The sign and handout also erroneously state[d] that the Coalition had received 501(c)(3) status, when it did not.

8) Respondent was aware of Canon 5B(2), which prohibits judges from individually soliciting funds for charitable organizations, or using her prestige of office for that purpose.

9) In relation to the use of her name and the identification of the Coalition as a 501(c)(3) organization, Respondent failed to:

a) Take sufficient care to review all materials distributed in accordance with the golf outing to insure that her name was not used in an improper manner, and that the tax exempt status of the Coalition was correctly identified;

b) Take action to revise the invitation;

c) Notify personnel at Garber & Mayers of the need to make changes to the invitation; or

d) Advise personnel at Garber & Mayers of limitations regarding the use of her name, and the erroneous identification of the organization as having received 501(c)(3) status, for other documents relating to the golf outing, after receiving the invitation.

10) MCL 450.2911 requires all corporations authorized to conduct affairs in this state to file a report with the State of Michigan no later than October 1 of each year.

11) Respondent, as Chairman of the Board of Trustees, is ultimately responsible for the filing of all required reports of the Coalition.

12) As of October 1, 2002, the Coalition had not filed annual reports for the years 2000, 2001, and 2002 with the State of Michigan. As a consequence, the Coalition was dissolved on October 1, 2002 pursuant to MCL 450.2922.

B. Respondent was at all relevant times assigned to *Elizabeth Bousquette v David Bousquette*, Third Judicial Circuit Court Case No. 00-024584 DM.

1) One of the issues in the case concerned the custody of two minor children.

2) After the plaintiff moved out of the state, custody was temporarily awarded to the maternal grandparents, Norman and Deborah Bresinski, as the defendant could not provide a suitable residence for the children, and as he was working a midnight shift.

3) On December 14, 2001, the Bresinskis and the defendant, both with counsel, appeared before Respondent for an evidentiary hearing to determine if the house purchased by the defendant was a

suitable residence for the children, and to confirm that the defendant had begun working a day shift so he could care for them.

4) During the hearing, the attorney for the grandparents raised the issue of where the children would spend the approaching Christmas holidays.

5) Counsel for the parties noted that there were conflicts in the judgment of divorce and a subsequent order, which clouded the issue of where the children would spend Christmas Eve and Christmas Day that year.

6) Respondent encouraged the parties to resolve the matter themselves, but when they were unable to agree and where each side had equally compelling arguments as to why the children should be with one party on Christmas day instead of Christmas Eve she told the parties it was nothing more than a coin flip.

7) Instead of just issuing a decision regarding the dispute, Respondent stated that she would decide it by the flip of a coin.

8) Although the Bresinskis' attorney and Norman Bresinski protested using a coin flip to determine the issue, Respondent produced a coin, allowed the defendant to call heads or tails, and flipped it.

9) The defendant called heads, which is what appeared on the coin, and Respondent thereby ordered that the children would spend Christmas Eve with defendant.

8. By consenting to this recommendation for discipline, Respondent expresses her deep regret for her conduct as set forth above, and for the resulting negative impact on the public perception of judges, the institutional integrity of the judiciary, and the administration of justice.

9. By consenting to this recommendation for discipline, Respondent will:

A. Take no measures to reactivate the Coalition for Family Preservation or to incorporate any other charitable organizations;

B. (1) Refrain from being an officer or board member of any other charitable organization, (2) refrain from participating in any charitable fundraising as an individual, and (3) refrain from lending her name to assist in the solicitation of funds for any other charitable organization. Respondent is not precluded from making contributions of her time or money to a charitable organization should she choose to make any; and

C. Refrain from resolving any disputed issue by the flip of a coin.

10. In consideration of Respondent's consent to discipline and her promises as to future conduct, the Commission agrees to dispose of all pending Investigated Grievances and to refrain from entertaining any further grievance or Request for Investigation for any act set forth in the Investigated Grievances.

11. Respondent's conduct as admitted and described above constitutes:

(a) Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30 and MCR 9.205;

(b) Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30, and MCR 9.205;

(c) Failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

(d) Irresponsible or improper conduct which erodes public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;

(e) Non-adherence to the usual and accepted methods of doing justice, contrary to the Code of Judicial Conduct, Canon 3A(9);

(f) Individual solicitation of funds on behalf of a charitable organization, or permissive use of the prestige of the judicial office for that purpose, contrary to the Code of Judicial Conduct, Canon 5B(2);

(g) Conduct which is prejudicial to the proper administration of justice, in violation of MCR 9.104(1);

(h) Conduct which exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(2)[.]"

WEAVER, J. I concur with the Court's order accepting the Judicial Tenure Commission's findings of facts and recommended public censure[1] consented to by Judge Helen E. Brown[2] for the following reasons:

1) Judge Brown's tossing a coin to decide a case,[3] thus making a judicial decision based on chance rather than the law and reason, was misconduct in office, clearly prejudicial to the administration of justice. The press coverage surrounding the misconduct greatly increased both the public's knowledge of the incident and, consequently, the public's trust and confidence in the judiciary was damaged.

2) Judge Brown's failure to properly perform her duties as an officer in a charitable organization in accordance with Canon 5B(2) was judicial misconduct. A judge should not individually solicit funds for a charitable organization or permit the prestige of her office to be used to solicit funds for a charitable organization. This misconduct damaged the public's trust and confidence in the judiciary.

Public censure and the publication of the facts, findings, recommendations, and consents in a case are necessary when the public has knowl-

---

[1] The Judicial Tenure Commission's Decision and Recommendation is quoted in Appendix A.

[2] The Waiver and Consent signed by Judge Brown is quoted in full in Appendix B.

[3] The case concerned a custody dispute over where two minor children would spend Christmas Eve and Christmas Day.

edge of a judge's misconduct. The damage to the public's trust and confidence in the judiciary caused by publicized judicial misconduct, such as the coin-toss incident in this case, demands from the Supreme Court a public decision fully disclosing the facts and the reasons for the decision.

Finally, it is important to emphasize that Judge Brown's willing consent to restricting her involvement with any civic and charitable organizations should not be construed in any way that would discourage or prohibit other judges from serving civic and charitable organizations, provided they comply with Canon 5B of the Code of Judicial Conduct.

### APPENDIX A

The text of the Judicial Tenure Commission's "Decision and Recommendation for Discipline" in the case *In re Helen E. Brown*, Grievance Numbers 01-13491, 01-13598, 01-13717, and 02-13858, dated April 14, 2003, provided in its entirety:

> The Judicial Tenure Commission of the State of Michigan ("Commission")[1] files this recommendation for discipline against Honorable Helen E. Brown, Judge of the 3rd Circuit Court, Family Division, Wayne County, Michigan. This action is taken pursuant to the authority of the Commission under Article 6, § 30 of the Michigan Constitution of 1963, as amended, and MCR 9.203.

---

[1] Commissioners Harwood and Chiamp recused themselves in Grievance No. 01-13717 and took no part in its consideration. The allegations in Grievance No. 01-13717, however, do not form part of this Decision and Recommendation.

---

> The Commission having conducted an investigation pursuant to MCR 9.207, and having received Respondent's consent in this recommendation, finds Respondent engaged in conduct clearly in violation of the Code of Judicial Conduct as set forth in the following paragraphs:
>
> 1. Respondent was a judge of the 3rd Circuit Court, Family Division, in the city of Detroit, Wayne County, Michigan at all relevant times mentioned.
>
> 2. As a judge, Respondent is subject to all of the duties and responsibilities imposed on her by the Michigan Supreme Court, and is subject, at a minimum, to the standards for discipline set forth in MCR 9.104 and MCR 9.205.
>
> 3. The Commission has conducted a preliminary investigation of certain grievances filed against Respondent, which are identified as Grievances Nos. 01-13491, 01-13598, 01-13717, and 02-13858 (collectively referred to as "Investigated Grievances").
>
> 4. On March 8, 2002, the Commission provided notice to Respondent of the charges being made in the Investigated Grievances pur-

suant to then-MCR 9.207(C), in what is commonly referred to as a 28-day letter.

5. On June 13, 2002, the Commission issued a supplement to the 28-day letter to Respondent.

6. The Commission and the Respondent have engaged in negotiations to resolve this matter. As a result of those negotiations, Respondent has consented to the resolution of this matter through an order of public censure by the Supreme Court. A copy of Respondent's consent is attached as Exhibit A.

7. The recommendation for order of public censure is based on the following facts:

A. Respondent is the founder and Chairman of the Board of Trustees of the Coalition for Family Preservation ("Coalition"), a Michigan nonprofit [sic] corporation.

1) On Friday, October 5, 2001, the law firm of Garber & Mayers, P.L.L.C. held a golf outing fundraiser for that organization.

2) On or before September 5, 2001, Garber & Mayers presented a number of the invitations for the event (Exhibit B) to Respondent by delivering them to her staff.

3) The invitation states that Respondent sponsored the golf outing.

4) The invitation also identifies the Coalition for Family Preservation as a "501(c)(3) non-profit organization," when it did not yet receive such status under section 501(c)(3) of the Internal Revenue Code until September 28, 2001. The Coalition received 501(c)(3) status in or around May 2002.

5) The program for the event (Exhibit C) prominently identifies Respondent as the "Coalition Founder."

6) A sign recognizing donors to the golf outing (Exhibit D) and a handout identifying the prizes for the outing (Exhibit E), which were posted at the event, prominently identify Respondent as the "Coalition Founder."

7) The sign and handout also erroneously state that the Coalition had received 501(c)(3) status, when it did not.

8) Respondent was aware of Canon 5B(2), which prohibits judges from individually soliciting funds for charitable organizations, or using her prestige of office for that purpose.

9) In relation to the use of her name and the identification of the Coalition as a 501(c)(3) organization, Respondent failed to:

a) Take sufficient care to review all materials distributed in accordance with the golf outing to insure that her name was not used in an improper manner, and that the tax exempt status of the Coalition was correctly identified;

b) Take action to revise the invitation;

c) Notify personnel at Garber & Mayers of the need to make changes to the invitation; or

d) Advise personnel at Garber & Mayers of limitations regarding the use of her name, and the erroneous identification of the organi-

zation as having received 501(c)(3) status, for other documents relating to the golf outing, after receiving the invitation.

10) MCL 450.2911 requires all corporations authorized to conduct affairs in this state to file a report with the State of Michigan no later than October 1 of each year.

11) Respondent, as Chairman of the Board of Trustees, is ultimately responsible for the filing of all required reports of the Coalition.

12) As of October 1, 2002, the Coalition had not filed annual reports for the years 2000, 2001, and 2002 with the State of Michigan. As a consequence, the Coalition was dissolved on October 1, 2002 pursuant to MCL 450.2922.

B. Respondent was at all relevant times assigned to *Elizabeth Bousquette v David Bousquette*, Third Judicial Circuit Court Case No. 00-024584 DM.

1) One of the issues in the case concerned the custody of two minor children.

2) After the plaintiff moved out of the state, custody was temporarily awarded to the maternal grandparents, Norman and Deborah Bresinski, as the defendant could not provide a suitable residence for the children, and as he was working a midnight shift.

3) On December 14, 2001, the Bresinskis and the defendant, both with counsel, appeared before Respondent for an evidentiary hearing to determine if the house purchased by the defendant was a suitable residence for the children, and to confirm that the defendant had begun working a day shift so he could care for them.

4) During the hearing, the attorney for the grandparents raised the issue of where the children would spend the approaching Christmas holidays.

5) Counsel for the parties noted that there were conflicts in the judgment of divorce and a subsequent order, which clouded the issue of where the children would spend Christmas Eve and Christmas Day that year.

6) Respondent encouraged the parties to resolve the matter themselves, but when they were unable to agree and where each side had equally compelling arguments as to why the children should be with one party on Christmas day instead of Christmas Eve she told the parties it was nothing more than a coin flip.

7) Instead of just issuing a decision regarding the dispute, Respondent stated that she would decide it by the flip of a coin.

8) Although the Bresinskis' attorney and Norman Bresinski protested using a coin flip to determine the issue, Respondent produced a coin, allowed the defendant to call heads or tails, and flipped it.

9) The defendant called heads, which is what appeared on the coin, and Respondent thereby ordered that the children would spend Christmas Eve with defendant.

8. By consenting to this recommendation for discipline, Respondent expresses her deep regret for her conduct as set forth above, and for the resulting negative impact on the public perception of judges, the institutional integrity of the judiciary, and the administration of justice.

9. By consenting to this recommendation for discipline, Respondent will:

A. Take no measures to reactivate the Coalition for Family Preservation or to incorporate any other charitable organizations;

B. (1) Refrain from being an officer or board member of any other charitable organization, (2) refrain from participating in any charitable fundraising as an individual, and (3) refrain from lending her name to assist in the solicitation of funds for any other charitable organization. Respondent is not precluded from making contributions of her time or money to a charitable organization should she choose to make any; and

C. Refrain from resolving any disputed issue by the flip of a coin.

10. In consideration of Respondent's consent to discipline and her promises as to future conduct, the Commission agrees to dispose of all pending Investigated Grievances and to refrain from entertaining any further grievance or Request for Investigation for any act set forth in the Investigated Grievances.

11. Respondent's conduct as admitted and described above constitutes:

(a) Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30 and MCR 9.205;

(b) Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30, and MCR 9.205;

(c) Failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

(d) Irresponsible or improper conduct which erodes public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;

(e) Non-adherence to the usual and accepted methods of doing justice, contrary to the Code of Judicial Conduct, Canon 3A(9);

(f) Individual solicitation of funds on behalf of a charitable organization, or permissive use of the prestige of the judicial office for that purpose, contrary to the Code of Judicial Conduct, Canon 5B(2);

(g) Conduct which is prejudicial to the proper administration of justice, in violation of MCR 9.104[A](1);

(h) Conduct which exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104[A](2); and

12. In determining an appropriate sanction in this matter, the Commission considered various relevant factors, including those set forth in *In re Brown* [*(After Remand)*], 464 Mich 135, 138 (2001), as follows:

A. Respondent's admitted actions, although multiple in number, are varied in nature and do not provide evidence of a pattern of repeated similar misconduct.

B. Respondent's admitted actions as related to the *Bousquette* case, occurred on-the-bench, which is generally more serious than off-the-bench conduct.

C. Respondent's actions, in the *Bousquette* case are prejudicial to the administration of justice, as they involve Respondent's failure to follow Michigan law and court rules.

D. Respondent's misconduct was more serious in *Bousquette v Bousquette* as it served to undermine the ability of the justice system to resolve the legal controversies in a manner consistent with expected judicial procedures. Respondent's conduct in relation to the Coalition for Family Preservation had no such impact.

E. Respondent's conduct did not involve the unequal application of justice based on any protected personal characteristic.

13. In determining an appropriate sanction in this matter, the Commission is also mindful of the Supreme Court's desire for "proportionality" based on comparable conduct. Although it is often difficult to compare current fact situations and recommendations with those of previous cases, particularly in cases of multiple and varied acts of misconduct, the admitted misconduct presented in this matter is amenable to certain comparisons.

A. The Michigan Supreme Court has considered abusive demeanor of judges on several occasions. In two of the more recent cases, the Supreme Court suspended judges based on either a pattern of misconduct, or repeated actions after prior discipline. In *In re Moore*, 464 Mich [98] (2001), the Supreme Court suspended the Respondent judge for six months due to the pattern of misconduct, including abusive remarks, and the fact that he had received a prior public censure for similar conduct. In *In re Bradfield*, 465 Mich [1309] (2002), the Supreme Court suspended the Respondent judge for one month for yelling at a defendant and failing to follow the proper disqualification procedure. Judge Bradfield had also received a prior public censure for abusive conduct, although it occurred in relation to a traffic altercation while he was not on the bench. Isolated instances of abusive demeanor have typically been resolved through private discipline, including an admonition or caution to the judge. Respondent's action is not part of a pattern of similar abusive behavior, and the Supreme Court has not previously disciplined her, but that conduct is accompanied by other acts of misconduct.

B. In *In re Arrigan*, 678 A2d 446 (RI[,] 1996), the Respondent judge improperly solicited funds on behalf of certain charitable organizations. The solicitations were made directly to attorneys

who appeared before the judge, who admitted to the acts, apologized for them, and voluntarily ceased doing them. The judge received a public censure from the Rhode Island Supreme Court. In the present matter, the use of Respondent's name for the invitations to attend the Coalition golf outing was unauthorized. However, Respondent was aware of the ethical restrictions on the use of her name, and was negligent in insuring that the material produced in relation to the golf outing met all requirements set forth in the Code of Judicial Conduct. She has agreed to disassociate herself with the Coalition so the act will not be repeated in the future.

C. In *In re Daniels*, 340 [So 2d] 301 (La[,] 1976), the Respondent judge was censured for, among other acts, giving the appearance that he was deciding criminal cases using the toss of a coin. While Respondent asserted that he had already decided the outcome of the cases before the coin toss, he admitted making the coin tosses, and therefore at a minimum there was an appearance that the fate of the individuals was based on chance. In *Bousquette v Bousquette*, Respondent was not involved in a criminal proceeding and only used the coin toss on one occasion. However, by determining where the children would spend Christmas Eve based on the luck of a coin toss, Respondent denigrated the judicial process and legal system.

14. Neither of Respondent's acts is in itself a gross violation of the Code of Judicial Conduct, and Respondent has never been previously disciplined. The disparity of the acts themselves prohibits any determination that Respondent has engaged in a pattern of misconduct. However, based on the nature of the acts described above, which have had an impact on the administration of justice, and which reveal disrespect or disregard for the Code of Judicial Conduct, and in consideration of the discipline rendered in the cases addressed above, the Commission is convinced that the misconduct in this case calls for Respondent to be publicly sanctioned.

### RECOMMENDATION

Wherefore, upon resolution of the Michigan Judicial Tenure Commission, pursuant to MCR 9.220(C), and in conjunction with Respondent's admission to the acts of judicial misconduct set forth above and her agreement to be disciplined, a copy of which is appended to this Decision and Recommendation as Exhibit A, it is recommended that the Supreme Court of Michigan enter an order publicly censuring Judge Helen E. Brown.

The Commission's "Decision and Recommendation for Discipline" was signed by all nine members of the Commission.

### APPENDIX B

The Judicial Tenure Commission's "Decision and Recommendation for Discipline" included, as Exhibit A, the "Waiver and Consent" signed by Respondent and her counsel. The Waiver and Consent provided:

I, Hon. Helen E. Brown, have read the Decision and Recommendation for Discipline of the Judicial Tenure Commission ("the Decision and Recommendation") in this matter, of which this Waiver and Consent is Attachment A. I acknowledge that the Decision and Recommendation is factual and accurate, and I agree to be bound by its terms. I have consulted with counsel, and I hereby knowingly, intentionally, and voluntarily consent to the Judicial Tenure Commission's recommendation to the Michigan Supreme Court for a public censure regarding my conduct in this matter. This Waiver and Consent is conditioned upon the Supreme Court adopting the sanction recommended by the Commission. I further waive any right to challenge the Commission's recommendation in the Supreme Court, and I stand ready to be disciplined as recommended by the Commission.